UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **KRISTIN TEBO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action No. |
| v. | ) | 09-40068-FDS |
| | ) | |
| **SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., PNC FINANCIAL SERVICES, INC., THE PNC FINANCIAL SERVICES GROUP, INC. and AFFILIATES LONG TERM DISABILITY PLAN,** | ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR LIMITED PRE-TRIAL DISCOVERY AND/OR TO EXPAND THE
ADMINISTRATIVE RECORD**

**SAYLOR, J.**

This is a dispute arising from the denial of continued long-term disability benefits. The matter arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. The benefits at issue were provided to plaintiff Kristin Tebo as part of her employment with defendant PNC Financial Services, Inc. Defendant Sedgwick Management Services, Inc. is the claims administrator for the plan.

Pending before the Court is plaintiff's motion for limited pre-trial discovery and to expand the administrative record. For the reasons stated below, the motion will be granted as to limited pre-trial discovery. The Court withholds judgment as to whether the administrative record should be supplemented until the discovery period is complete.

I.      **Background**

Kristin Tebo was employed by PNC as an Investment Accounting Manager from the year 2000 through May 19, 2004. (Am. Compl. at ¶ 14). She had surgery on her left eye on May 20, 2004 and did not return to work thereafter. (*Id.* at ¶ 14, 18). At the time of her surgery, Tebo lacked stereoscopic vision because the vision in her right eye was significantly diminished by a congenital hamartoma (a benign tumor on the optic nerve). (*Id.* at ¶ 19). As a result of this condition, she had no practical vision in her right eye at the time of surgery. (*Id.*). After the surgery, Tebo could only drive in daylight and was unable to read or view a computer without pain. (*Id.* at ¶ 21).

Tebo submitted an "Employee Application for Benefits" form on August 16, 2004. (*Id.* at ¶ 20-21). According to the terms of the relevant employee benefit plan, disability benefits during the first 24 months of disability are provided if the applicant is unable to perform the substantial and material duties of his or her "own occupation." (*Id.* at ¶ 13). After 24 months, the plan only provided benefits to applicants who were unable to engage in "any occupation." (*Id.*). Tebo received disability benefits for 24 months.

In March 2006, Sedgwick informed her that beginning on August 17, 2006, she would only receive benefits if Sedgwick found that she was not able to engage in any occupation. (*Id.* at ¶ 13, 30).

On August 15, 2006, Sedgwick informed Tebo that her disability benefits were suspended effective August 18, 2006, "based on a lack of current treatment information on file supportive of continuing total disability." (*Id.* at ¶ 32). She submitted additional records, but in February 2007 Sedgwick determined that its decision to deny benefits was appropriate. (*Id.* at ¶ 37). Tebo

appealed.  (*Id.* at ¶ 41).  On October 3, 2007, after reviewing all of the medical and other evidence provided by Tebo, Sedgwick made a final determination that she was not eligible for disability benefits after August 17, 2006.  (*Id.* at ¶ 43-44).

Tebo requested a copy of the claim file on December 18, 2008; Sedgwick provided her with an unredacted copy, which defendants contend contains information subject to the attorney-client privilege, the work-product doctrine, or both.  (*Id.* at ¶ 49-50).[1]  Sedgwick has not provided Tebo with other documents that she requested, arguing that they are not discoverable.  (*Id.* at ¶ 49-50).

The administrative record contains a copy of the claim file in which the allegedly privileged entries for September 26 and 28, 2007, have been redacted.  (Pl.'s Mem. Ex. B, C).

On April 2, 2009, Tebo filed a complaint in this Court against PNC and Sedgwick challenging the 2007 final determination.

Tebo has moved to obtain additional discovery.  Specifically, she seeks to discover the following information:  (1) the identity of the "client liaison" who approved the denial of her claim; (2) a copy of the documents and communications that the client liaison had before him at the time that he denied the claim; and (3) a copy of Sedgwick's internal guidelines, plans, and training materials that are relevant to the general topics encompassed by Tebo's claim and were in existence at the time that her claim was under review, as well as curriculum items and seminar

---

[1] The unredacted entries provided as follows:

09/26/2007 - appeal determination letter submitted to client liaison for review
. . .
09/28/2007 - appeal determination letter reviewed and approved by client liaison, letter forwarded to appeals manager for review . . .

(Pl.'s Mem. Ex. B, C).

3

offerings during the relevant time frame. She also requests that the Court supplement the record with an unredacted version of the electronic claim note entries for September 26 and 28, 2007.

## II. Analysis

A plaintiff seeking supplementation of the administrative record in an ERISA appeal bears a relatively high burden of persuasion.[2] Here, however, plaintiff is essentially requesting discovery of documents that she is entitled to under the relevant Department of Labor regulations.

ERISA requires that every employee benefit plan must provide individuals whose benefits claims were denied with a "full and fair review" of the denial. 29 U.S.C. § 1133 (2003). The Department of Labor has interpreted a "full and fair review" to require that claimants be given access to all "relevant" documents. 29 C.F.R. § 2560.503-1(h)(2)(iii). Where the plan in question provides disability benefits, "relevant" documents include "statement[s] of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination." *Id.* at § 2560.503-1(m)(8)(iv).[3] Under the regulations, "the claimant should receive any information demonstrating that, in making the adverse benefit determination, the plan complied with its own processes for ensuring appropriate decision making and consistency." 65 Fed. Reg. 70,246, 70,252 (Nov. 21, 2000).

---

[2] "There is a strong presumption that the record on review is limited to the record before the plan administrator *at the time* of the administrator's final decision." *Morales-Alejandro v. Medical Card System, Inc.,* 486 F.3d 693, 698 (1st Cir. 2007) (internal quotations omitted) (emphasis in original); *see Brilmyer v. University of Chicago,* 431 F. Supp. 2d 154, 159-160 (D. Mass. 2006). To overcome this presumption, "some very good reason is needed." *Liston v. Unum Corp. Officer Severance Plan,* 330 F.3d 19, 23 (1st Cir. 2003).

[3] Defendants' argue that the documents requested "were not considered in deciding [p]laintiff's [long-term disability] claim at issue. . . ." (Def.'s Mem. at 14). However, as the regulations make clear, the claimant is entitled to have copies of the administrator's internal procedural documents, regardless of whether they were consulted in the decision-making process.

### A. Redacted Claim Note Entries and Client Liaison's Identity

Plaintiff requests that the identity of the "client liaison" referred to in Sedgwick's unredacted September 26 and 28, 2007 claim note entries be provided to her, along with the liaison's employer and the information that the liaison reviewed when making a decision on plaintiff's claim. (Pl.'s Mem. at 7).[4] Sedgwick contends that the requested information is not discoverable because it consists of communications that were either privileged or made in anticipation of litigation. (Def.'s Mem. at 15-16). For the following reasons, the Court concludes that the defendants have failed to meet their burden of showing that the information is protected.

### 1. Relevance of Material

Plaintiff alleges that the client liaison is an individual who was involved in her claims review process and whose approval was needed before her appeal could be denied. (Pl.'s Mem. at 7). Defendants have not presented any evidence to the contrary, and the Court has little information from which to infer the client liaison's role. Based on the record before the Court—that the client liaison was given an appeal determination letter for review on September 26, 2007, and that he or she approved that letter on September 28, 2007—plaintiff's presumption that the liaison's approval was a necessary part of the denial of her appeal appears to be reasonable. If, indeed, the liaison played an integral role in the denial of plaintiff's appeal, then plaintiff is surely entitled to know who he or she is and what information he or she considered. It

---

[4] Plaintiff also requests that an unredacted version of the claim note entries be added to the administrative record. (Pl.'s Mem. at 7). The Court withholds judgment at this time as to whether the administrative record should be supplemented at all. The question of whether the record is complete or needs supplementation is one which is better resolved after discovery has been completed.

appears that the client liaison was part of Sedgwick's appeals determination process at the time that plaintiff's claim was denied.

### 2. Attorney-Client Privilege and Attorney Work Product

The burden is on defendants, as the parties claiming attorney-client privilege, to establish that the privilege exists and covers the statements at issue here. *In re Keeper of Records*, 348 F.3d 16, 22 (1st Cir. 2003). Defendants have failed to meet that burden here. They have not identified who created the entries, at what date and time they were created, and for what purpose—indeed, they have not even identified any relevant attorney.[5]

To the extent that defendants assert that the information is protected as work product, they have likewise failed to meet their burden of proof. *See In re Lernout & Hauspie Sec. Litig.*, 222 F.R.D. 29, 36 (D. Mass. 2004) (holding that the party invoking the work product doctrine bears the burden of proof). The work product doctrine protects ". . . a document or tangible thing, . . . which was prepared in anticipation of litigation, and . . . was prepared by or for a party, or by or for a party's representative." *Colonial Gas Co. v. Aetna Cas. and Sur. Co.*, 139 F.R.D. 269, 274 (D. Mass. 1991) (quoting *Pasteris v. Robillard*, 121 F.R.D. 18, 20 (D. Mass. 1988));

---

[5] Plaintiff also argues that the fiduciary exception to the attorney-client privilege applies here. (Pl.'s Reply Mem. at 7-9). It is true that many courts have recognized a fiduciary exception to the attorney-client privilege in ERISA cases. *See Geissal v. Moore Med. Corp.*, 192 F.R.D. 620, 624 (E.D. Mo. 2000) (fiduciary exception is "well established" and has been applied in cases involving review of the decisions of ERISA plan administrators). In the ERISA context, the fiduciary exception provides that communications between an attorney and a plan administrator or fiduciary are not protected from disclosure to the beneficiaries. *See id.* However, because the relevant communications between Sedgwick employees and the client liaison arose after Sedgwick had issued its initial decision to deny plaintiff benefits, the fiduciary exception does not apply. In other words, the interests of the beneficiary and those of the plan administrator first diverged when Sedgwick issued a decision denying plaintiff any benefits. At this point, the fiduciary exception to the attorney-client privilege no longer applies. *See Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 48 (D. Mass. 2007) ("Frequently, the key question is whether the communication was made before or after the decision to deny benefits.") (quoting *Asuncion v. Metropolitan Life Ins. Co.*, 493 F.Supp.2d 716, 720-21 (S.D.N.Y. 2007)); *Black v. Bowes*, 2006 WL 3771097 *3 (S.D.N.Y. Dec. 21, 2006); *see also Geissal*, 192 F.R.D. at 625-26 (discussing pre- and post-decisional legal advice).

*see* Fed. R. Civ. P. 26(b)(3).

Here, defendants have failed to show when the claim note entries were created. It appears that plaintiff first requested copies of the entries on November 17, 2008—nearly four months before she filed the complaint on April 2, 2009. (Pl.'s Mem. at 3, Ex. B). Defendants contend that because plaintiff had retained an attorney and communicated to defendants through this attorney at the time that she made the request, the entries were created in anticipation of litigation.

Even assuming that plaintiff's securing of an attorney is sufficient to trigger work-product protection, it appears that the entries were created before Sedgwick had issued its final determination on plaintiff's claim. It appears as though the entries were recorded on a daily basis and used as a log to keep track of the work that Sedgwick performed for PNC. The entries list different activities which were conducted on the date in question, and below that there is a line indicating "[Time Note Created : 1:05 PM ]." (Pl.'s Mem. Ex. B). This strongly suggests that the entries were recorded on the date that the entry references, and that they were not compiled after the fact in order to comply with plaintiff's request. Only the time of the entry needed to be recorded because the date that it was recorded is understood to be the same as the entry itself. Thus, it seems as though the entries were not created in late 2008 (when plaintiff requested them) but rather in September 2007 (before Sedgwick had even made its final determination on her claim). It is not clear how a daily log that was created before defendants even issued their final determination on plaintiff's claim could have been created in anticipation of litigation. Thus, the work product doctrine does not protect the information at issue.

### B.     Sedgwick's Internal Guidelines, Plans, and Training Materials

Plaintiff cites to *Glista v. Unum Life Ins. Co. of America*, 378 F.3d 113, 122-23 (1st Cir. 2004), for the proposition that Sedgwick's internal guidelines, plans, and training materials are discoverable. In *Unum*, the First Circuit held that the administrator's internal guide and training materials were admissible and should be added to the administrative record. *Id.* While the Court in *Unum* discussed the admissibility of internal documents and did not explicitly address discoverability, the reasoning behind the decision informs the decision here.

First, and as in *Glista*, the information that plaintiff requests may potentially shed light into whether the administrator's decision-making process was arbitrary and capricious. 378 F.3d at 122-23.

> . . . what is sought to be admitted are the plan administrator's own documents interpreting the language of the Plan and providing the standard for evaluation of the facts presented. The documents here are more analogous to an administrative agency's guidelines or regulations, which are routinely considered in evaluating whether the agency's actions were arbitrary or capricious. The documents here shed light on the "legal" rule the Plan applies, not the underlying facts presented to the Administrator.

*Id.*

Furthermore, the *Unum* court noted that requests for an administrator's internal documents are far less burdensome on the defendant than requests for statistics about similarly situated beneficiaries. *Id.* at 122. The same holds true here, where plaintiff is requesting documents that are limited in scope and can easily be provided by defendants. *Id.* ("[The administrator's guide] and the Training Materials are discrete documents easily made available.").[6]

---

[6] Plaintiff has only requested documents that "Sedgwick produced during the pendency of her claim that touched upon the issue of managing subjective claims, i.e. pain/fatigue, that do not lend themselves to objective diagnostic measurement." (Pl.'s Mem. at 8-9). These documents, by definition, have already been created by

The First Circuit did note that "the weight and admissibility of internal documents . . . will vary with the facts of each case." 378 F.3d at 123. In particular, the Court stated that "[s]uch documents are most likely to be relevant where they have been authenticated, have been generated or adopted by the plan administrator, concern the policy in question, are timely to the issue in the case, are consistently used, and were known or should have been known by those who made the decision to deny the claim." *Id.*

The plaintiff's request for Sedgwick's internal guidelines, plans, and training materials appears to fit these requirements. If the items are produced by Sedgwick, there is not likely to be an issue as to authentication. The documents that plaintiff requests are implicitly limited to those either generated by Sedgwick itself, or adopted by it through the training of its employees. Plaintiff has only requested documents that relate to the standards under which her application was analyzed, thus ensuring that the documents concern the policy in question. Plaintiff's request is also limited to those documents in existence during the time that her case was pending before Sedgwick. Finally, while the Court has no way of knowing whether the requested documents were "consistently used" or "known or should have been known by those who made the decision to deny the claim," it is a fair assumption that Sedgwick's decision-makers would be well-versed in the company's internal guidelines and training materials. Thus, discovery of these requested documents is appropriate as long as it is limited to those documents that both existed at the time that plaintiff's claim was pending and relate to the general topics addressed in the administrator's decision.

---

Sedgwick.

Plaintiff's further request for a list of Sedgwick's curriculum and seminar offerings during the relevant time period is less compelling. Simply because Sedgwick created what appear to have been optional curriculum and seminar offerings, it does not necessarily follow that the information contained in those lessons were "known or should have been known by those who made the decision to deny the claim." Nor is it likely that the information contained in those lessons was company policy or was ordinarily or customarily expected to be understood by Sedgwick employees. Accordingly, and to that extent, plaintiff's request will be denied.

### III. Conclusion

For the foregoing reasons, plaintiff's Motion for Limited Pre-Trial Discovery and/or to Expand the Administrative Record is GRANTED in part to the extent that discovery will be permitted as described in this opinion. Plaintiff's request to supplement the administrative record is denied without prejudice to its renewal until after discovery has been completed.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: May 20, 2010